IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )    CRIMINAL NO. 4:23-cr-10 |
| | ) |
| JOVAUGHN E. TURNER, | ) |
| | ) |
| Defendant. | ) |

## STATEMENT OF FACTS

By signing below, the parties stipulate that the following facts are true and correct, and that had the matter gone to trial, the United States of America would have proven them beyond a reasonable doubt, by competent and admissible evidence.

1.    JOVAUGHN E. TURNER, the defendant herein, lived in the Eastern District of Virginia.

### Wire Fraud Conspiracy (Count 1)

2.    From in or about May 2020 through in or about at least September 2021, the defendant knowingly and joined together with other coconspirators to execute a scheme and artifice to defraud and for obtaining money and property by means of materially false pretenses, representations, and promises – namely, by (i) submitting fraudulent claims for pandemic-related unemployment benefits and (ii) counterfeiting checks stolen from the mail.

3.    With respect to the first means of executing the scheme and artifice to defraud, on or about May 2020, the defendant submitted fraudulent claims for pandemic-related unemployment benefits. They falsely represented that they lost their job and/or were working reduced hours because of the COVID-19 pandemic.

4.    On or about May 24, 2020, the defendant filed an unemployment claim with the

Virginia Employment Commission (VEC) and falsely reported working reduced hours at Amazon because of the COVID-19 pandemic.

5.      In fact, the defendant worked only briefly for Prime Now LLC (a subsidiary of Amazon), earning less than $2,500 in total wages. He was not laid off or offered reduced hours because of the COVID-19 pandemic. On the contrary, employers like Prime Now LLC – which provide online grocery services – were in peak demand during the height of the pandemic.

6.      On or about June 2, 2020, the defendant filed another claim for unemployment with the VEC and falsely reported that he was laid off from his employment at Wendy's in October 2019 – when in fact, he voluntarily abandoned this job.

7.      As a result of the defendant's materially false representations in his unemployment applications, the VEC approved his claims and paid him approximately $21,039 in benefits.

8.      These fraud proceeds were wired from the VEC to the defendant's bank account (ending in 9189) at Stride Bank, which caused electronic transmissions of information to occur between computer terminals in the Eastern District of Virginia and terminals and/or servers outside of the Commonwealth of Virginia.

9.      With respect to the second means of executing the scheme and artifice to defraud, the defendant and COCONSPIRATOR 1 obtained stolen checks, and account numbers from legitimate account holders. They subsequently used the financial information on the stolen checks to make counterfeit checks.

10.     On September 26, 2021, the police conducted a lawful search of the defendant and COCONSPIRATOR 1's residence located at ** Triple Crown Court in Hampton, Virginia. Among other things, they recovered 11 counterfeit checks, $28,500.00 in U.S. currency, a laptop

2

JT  mem ßMC

computer, five magnetic ink character recognition (MICR) printers,[1] check stock paper, a money counting machine, and a magnetic card reader/writer/encoder.

11.     In addition to the indicia of fraud found in the residence, law enforcement recovered two firearms.  On or about September 26, 2021, the defendant illegally possessed a loaded Glock 23 semiautomatic handgun (serial number BSMA608) to protect himself.  In the preceding weeks, the defendant and COCONSPIRATOR 1's residence had been the target of a series of robberies and attempted robberies.

12.     The eleven counterfeit checks found in the defendant and COCONSPIRATOR 1's residence were drawn against the business bank accounts of six entities that had checks stolen from the mail, including JB Family Ltd Partnership in Grafton, Wisconsin; AstenJohnson in Charleston, South Carolina; Innovative Store Systems, Inc. in La Habra, California; South Dade Realty in Miami, Florida; Neurise Group of Florida in Amityville, New York; and Astro Satellite of South Florida in Miami, Florida.

13.     The government's investigation shows that a third person recruited individuals – including I.R., I.M. A.W., S.M., T.C., D.R. – to deposit the stolen financial instruments in their bank accounts.

14.     The counterfeit checks were made payable to the recruited individuals to obfuscate that the defendant and others were responsible for the counterfeit checks.

15.     The counterfeit checks found in the defendant's residence were made payable to six different individuals and all for amounts just under $2000.00.

16.     After depositing the counterfeit checks, CO-CONSPIRATOR 1 withdrew as much U.S. currency as the financial institution would allow before the accounts were frozen.

---

[1] A MICR printer uses MICR ink and toner to print the numbers found on checks.

17.     The following fraudulent checks are linked to the eleven counterfeit checks found in the defendant's residence.

| Victim | Payee | Check Number | Amount |
|---|---|---|---|
| Innovative Store Systems, Inc. | I.R. | 025100 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025200 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025300 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025400 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025500 | $1,990.68 |
| Innovative Store Systems, Inc | I.R. | 025600 | $1,270.68 |
| Innovative Store Systems, Inc. | D.R. | 25100 | $1,990.68 |
| Innovative Store Systems, Inc. | D.R. | 25190 | $1,990.68 |
| AstenJohnson | I.R. | 00279557 | $1,990.90 |
| Innovative Store Systems, Inc. | D.R. | 25310 | $1,990.68 |
| Innovative Store Systems, Inc. | D.R. | 25250 | $1,990.68 |
| Astro Satellite of South Florida, Inc. | A.W. | 56810 | $1,736.12 |
| Astro Satellite of South Florida, Inc. | A.W. | 047038 | $1,869.82 |
| Neurise Group of Florida, LLC | I.M. | 8573 | $1,866.12 |
| Neurise Group of Florida, LLC | I.M. | 8969 | $1,976.32 |
| Neurise Group of Florida, LLC | I.M. | 9346 | $1,969.11 |
| Neurise Group of Florida, LLC | I.M. | 8731 | $1,931.46 |
| Neurise Group of Florida, LLC | I.M. | 9122 | $1,900.78 |
| South Dade Realty, Inc. | T.C. | 52146 | $1,990.78 |
| South Dade Realty, Inc. | T.C. | 52340 | $1,990.78 |

18.     When the counterfeit checks were negotiated, there were interstate wires of information between the check issuer, the depository institution, and the Federal Reserve as the national check clearing system.

19.     The foregoing wires resulted in electronic transfers of information between locations in the Eastern District of Virginia and terminals and/or computers located outside of the Commonwealth of Virginia.

20.     The parties agree that the foreseeable fraud loss from Count 1 was more than $40,000, but less than $95,000.

**Firearm by a Prohibited Person (Count 2)**

21.     On or about December 30, 2021, the defendant illegally possessed a loaded Glock 23 .40 caliber semiautomatic handgun (serial number AELR353).

22.     On or about December 30, 2021, at approximately 2:30 p.m., law enforcement from Chesapeake Police Department stopped the defendant because there was an outstanding probation warrant for the registered owner of his vehicle.

23.     After confirming the defendant's identity and the arrest warrant, the police arrested the defendant on the outstanding warrant.

24.     The defendant consented to police searching his vehicle. A Glock 23 .40 caliber semiautomatic handgun under the driver's seat. The handgun was loaded with a round in the chamber.

25.     At the time of his arrest, the defendant was in possession of a firearm and ammunition despite knowing he had been previously convicted of a felony punishable by more than one year in prison and knowing that he was prohibited from possessing firearms.

26.     After being warned of his rights, the defendant told the arresting officer that he knew he was a felon.

27.     The defendant's Glock 23 .40 caliber handgun was a firearm designed to expel a projectile by the action of an explosive that was manufactured in Georgia and traveled in and affected interstate commerce.

*       *       *

28.     The defendant stipulates and agrees that he committed the acts described herein unlawfully, knowingly, and willfully, and without legal justification or excuse with the specific intent to do that which the law forbids, and not by mistake, accident or any other reason. The

5

defendant further acknowledges that the foregoing statement of facts does not describe all of his conduct relating to the offenses charged in this case, nor does it identify all of the persons with whom he may have engaged in illegal activities.

Respectfully Submitted,

Jessica D. Aber
United States Attorney

By:

D. Mack Coleman
Assistant United States Attorney

6

JT Mom ℳℳC

After consulting with my attorney, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States could prove these facts beyond a reasonable doubt.

_____
JOVAUGHN E. TURNER
Defendant

I am counsel for JOVAUGH E. TURNER. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

_____
Mary E. Maguire
Defense Counsel

7