IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Newport News Division*

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 4:23-cr-10 |
| ) | |
| JOVAUGHN E. TURNER, ) | |
| ) | |
| Defendant. ) | |

REVISED POSITION OF UNITED STATES ON SENTENCING

In accordance with 18 U.S.C. § 3553(a) and the United States Sentencing Commission, *Guidelines Manual,* § 6A1.2, the United States of America, through its attorneys, Jessica D. Aber, United States Attorney for the Eastern District of Virginia, and D. Mack Coleman, Assistant United States Attorney, hereby represents that it has reviewed the probation office's presentence report (hereinafter "PSR") and that it does not dispute any of the facts set forth therein.[1] For the reasons to follow, and the reasons to be offered during the sentencing hearing, the United States respectfully requests that the Court impose concurrent sentences of 27 months of incarceration on Counts 1 and 2.

The defendant is a convicted felon who engaged in fraud and firearm offenses while under court supervision. He and his coconspirators ran a check fraud ring out of their Hampton apartment. Because the fraud was lucrative, other criminals began to burglarize the apartment. This culminated in the defendant – a convicted felon – shooting and killing a would-be burglar outside the apartment. Crime begets crime. This is illustrative of the violence attendant to illegal activity and the corresponding danger to the defendant and the community. A sentence of 27

---

[1] Undersigned counsel made a mistake calendaring the deadline for this brief and apologizes to the Court for filing one day out of time.

months is the floor necessary to provide just punishment, protect the community, deter the defendant and those similarly situated to him, and promote respect for the law.

## PROCEDURAL HISTORY

On February 22, 2023, a grand jury sitting in the Newport News Division of the Eastern District of Virginia returned a two-count indictment, charging the defendant with twice being in possession of firearms as a prohibited person, in violation of 18 U.S.C. § 922(g). (ECF No. 1.) On June 14, 2023, the United States charged the defendant by criminal information with one count of conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1349, 1343, and one count possession of a firearm by a prohibited person, in violation of 18 U.S.C. § 922(g). (ECF No. 21.) On June 22, 2023, the defendant agreed to waive indictment and plead guilty to both counts in the criminal information. (ECF No. 22.) In so doing, the defendant agreed to a global resolution of his fraud and firearm offenses.

## OFFENSES OF CONVICTION

I.  Wire Fraud Conspiracy

From in or about May 2020 through in or about at least September 2021, the defendant knowingly and joined together with other coconspirators to execute a scheme and artifice to defraud and for obtaining money and property by means of materially false pretenses, representations, and promises – namely, by (i) submitting fraudulent claims for pandemic-related unemployment benefits and (ii) counterfeiting checks stolen from the mail.

With respect to the first means of executing the scheme and artifice to defraud, on or about May 2020, the defendant submitted fraudulent claims for pandemic-related unemployment benefits. They falsely represented that they lost their job and/or were working reduced hours because of the COVID-19 pandemic. On or about May 24, 2020, the defendant filed an

unemployment claim with the Virginia Employment Commission (VEC) and falsely reported working reduced hours at Amazon because of the COVID-19 pandemic. In fact, the defendant worked only briefly for Prime Now LLC (a subsidiary of Amazon), earning less than $2,500 in total wages. He was not laid off or offered reduced hours because of the COVID-19 pandemic. On the contrary, employers like Prime Now LLC – which provide online grocery services – were in peak demand during the height of the pandemic.

On or about June 2, 2020, the defendant filed another claim for unemployment with the VEC and falsely reported that he was laid off from his employment at Wendy's in October 2019 – when in fact, he voluntarily abandoned this job. As a result of the defendant's materially false representations in his unemployment applications, the VEC approved his claims and paid him approximately $21,039 in benefits.

With respect to the second means of executing the scheme and artifice to defraud, the defendant and COCONSPIRATOR 1 obtained stolen checks, and account numbers from legitimate account holders. They subsequently used the financial information on the stolen checks to make counterfeit checks. On September 26, 2021, the police conducted a lawful search of the defendant and COCONSPIRATOR 1's residence located at ** Triple Crown Court in Hampton, Virginia. Among other things, they recovered 11 counterfeit checks, $28,500.00 in U.S. currency, a laptop computer, five magnetic ink character recognition (MICR) printers,[2] check stock paper, a money counting machine, and a magnetic card reader/writer/encoder. In addition to the indicia of fraud found in the residence, law enforcement recovered two firearms.

The eleven counterfeit checks found in the defendant and COCONSPIRATOR 1's residence were drawn against the business bank accounts of six entities that had checks stolen

---

[2] A MICR printer uses MICR ink and toner to print the numbers found on checks.

from the mail, including JB Family Ltd Partnership in Grafton, Wisconsin; AstenJohnson in Charleston, South Carolina; Innovative Store Systems, Inc. in La Habra, California; South Dade Realty in Miami, Florida; Neurise Group of Florida in Amityville, New York; and Astro Satellite of South Florida in Miami, Florida.  The government's investigation shows that a third person recruited individuals – including I.R., I.M. A.W., S.M., T.C., D.R.  - to deposit the stolen financial instruments in their bank accounts. The counterfeit checks were made payable to the recruited individuals to obfuscate that the defendant and others were responsible for the counterfeit checks. The counterfeit checks found in the defendant's residence were made payable to six different individuals and all for amounts just under $2000.00.  After depositing the counterfeit checks, CO-CONSPIRATOR 1 withdrew as much U.S. currency as the financial institution would allow before the accounts were frozen.

The following fraudulent checks are linked to the eleven counterfeit checks found in the defendant's residence.

| Victim | Payee | Check Number | Amount |
|---|---|---|---|
| Innovative Store Systems, Inc. | I.R. | 025100 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025200 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025300 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025400 | $1,990.68 |
| Innovative Store Systems, Inc. | I.R. | 025500 | $1,990.68 |
| Innovative Store Systems, Inc | I.R. | 025600 | $1,270.68 |
| Innovative Store Systems, Inc. | D.R. | 25100 | $1,990.68 |
| Innovative Store Systems, Inc. | D.R. | 25190 | $1,990.68 |
| AstenJohnson | I.R. | 00279557 | $1,990.90 |
| Innovative Store Systems, Inc. | D.R. | 25310 | $1,990.68 |
| Innovative Store Systems, Inc. | D.R. | 25250 | $1,990.68 |
| Astro Satellite of South Florida, Inc. | A.W. | 56810 | $1,736.12 |
| Astro Satellite of South Florida, Inc. | A.W. | 047038 | $1,869.82 |
| Neurise Group of Florida, LLC | I.M. | 8573 | $1,866.12 |
| Neurise Group of Florida, LLC | I.M. | 8969 | $1,976.32 |
| Neurise Group of Florida, LLC | I.M. | 9346 | $1,969.11 |
| Neurise Group of Florida, LLC | I.M. | 8731 | $1,931.46 |

| Neurise Group of Florida, LLC | I.M. | 9122  | $1,900.78 |
| South Dade Realty, Inc.       | T.C. | 52146 | $1,990.78 |
| South Dade Realty, Inc.       | T.C. | 52340 | $1,990.78 |

As part of the plea agreement, the parties agree that the foreseeable fraud loss from Count 1 was more than $40,000, but less than $95,000.

II.     December 30, 2021, Firearm Offense

On or about December 30, 2021, the defendant illegally possessed a loaded Glock 23 .40 caliber semiautomatic handgun (serial number AELR353).



On or about December 30, 2021, at approximately 2:30 p.m., law enforcement from Chesapeake Police Department stopped the defendant because there was an outstanding probation warrant for the registered owner of his vehicle. After confirming the defendant's identity and the arrest warrant, the police arrested the defendant on the outstanding warrant. The defendant consented to police searching his vehicle. A Glock 23 .40 caliber semiautomatic handgun under the driver's

seat. The handgun was loaded with a round in the chamber. At the time of his arrest, the defendant was in possession of a firearm and ammunition despite knowing he had been previously convicted of a felony punishable by more than one year in prison and knowing that he was prohibited from possessing firearms. After being warned of his rights, the defendant told the arresting officer that he knew he was a felon.

III.    September 26, 2021, Firearm Offense

On or about September 26, 2021, the defendant illegally possessed a loaded Glock 23 semiautomatic handgun. On this day, Hampton police responded to the defendant's residence in reference to a shooting. Upon arrival, the police located a dead body and the defendant standing at the doorway to his apartment. The defendant immediately advised that he shot and killed the decedent, A.M., in self-defense after A.M. brandished a firearm to rob the defendant. The police later obtained Ring camera footage of the shooting that corroborated the defendant's story.



The above still shot from the Ring camera footage on the left is from just before the defendant

shot and killed A.M. The above still shot from the body-worn camera of Hampton police is from just after they arrived on scene. The defendant told law enforcement that he drew his firearm and was suspicious of A.M. because his home had been burglarized multiple times recently.

## THE DEFENDANT'S BACKGROUND

The defendant is a 21-year-old male from Chesapeake, Virginia. Despite being relatively young, he is already a convicted felon. In July of 2020, he was convicted of shooting or throwing missiles at a vehicle, in violation of Virginia Code § 18.2-154. According to the PSR, he maliciously shot at an occupied vehicle whereby the life of a person in such motor vehicle was put in peril. (PSR ¶ 43.) Notably, he was under supervised probation as a result of this 2020 conviction at the time he committed the instant offense.

While on bond in this case, the defendant was stopped by Norfolk police for traffic violations. The defendant's brother was in the car with him. Police found a firearm in the vehicle, which the defendant claimed he did not know that his brother had in his possession. In the wake of this incident, Probation petitioned the Court on July 25, 2023, to have his bond conditions modified to prohibit him from being around anyone who was in possession of a firearm, which the Court granted. (ECF No. 28.) Only a few weeks later on August 13, 2023, law enforcement documented the defendant repost the pictures and videos to social media showing him posing with firearms and currency. Probation confronted the defendant about the photographs. He lied and said he did not know about the photos when, in fact, he had reposted them from a friend's social media. The defendant further said that they were old pictures that predated him being on bond. Given the first lie, the government has substantial doubts about the second representation about the age of the pictures.



Irrespective of when the pictures were taken, however, they show a lack of respect for the Court and his conditions of release. They make it appear as if he is flouting his bond conditions.

The defendant was primarily raised by his mother. His does not have any contact with his father. The defendant had a difficult childhood. He suffered because of his family's financial instability, substance abuse problems, and child abuse. (PSR ¶ 51-62.) Despite this adversity, the defendant is in good mental and physical health. (PSR ¶ 63-64.) The defendant has a history of abusing marijuana, but he tested negative while on bond. He does not appear to have any problems with drug addiction. (PSR ¶ 65-66.)

The defendant reportedly works as a self-employed barber. (PSR ¶ 69.) This was not subject to verification. Given the volume of currency recovered during the search warrant and that

he routinely posted to social media during this period, the government submits it is more credible that he was primarily paying his expenses by committing fraud.

## OBJECTIONS TO THE PSR

There are no unresolved objections to the PSR.

## POSITION ON SENTENCING AND ARGUMENT

The United States recognizes that a sentencing court may not presume that a sentence within the advisory guideline range is reasonable; however, the guidelines remain a significant and pivotal component of the sentencing process. The Court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a), explaining any variance from the former with reference to the latter." *Nelson v. United States*, 129 S. Ct. 890, 891-92 (2009). Title 18, United States Code, Section 3553(a)(1) provides that, in determining a sentence, courts must consider the nature and circumstances of the offense, as well as the history and characteristics of the defendant. The United States respectfully requests that the Court impose concurrent sentences of 27 months of incarceration on Counts 1 and 2.

*First*, the nature and circumstances of the offenses of conviction are extremely serious. The defendant pleaded guilty to both fraud and firearm offenses. As part of the plea agreement, the defendant agreed that the adjusted offense level for the firearm offense was 18 – 14 as a base offense and a four-level enhancement for possessing the firearm in connection with another felony offense (namely, the fraud). (ECF No. 24 ¶ 4.) By contrast, the parties agreed that the adjusted offense level for the fraud was 19 – 7 as a base offense, a six-level enhancement for the fraud loss, a two-level enhancement for device-making equipment, a two-level enhancement for pandemic fraud, and a two-level enhancement for possessing the firearm in connection with the fraud. (*Id*.)

The parties agreed that the offenses in Counts 1 and 2 should be grouped, in part, because the firearm was used to further the fraud offense. This is significant because the defendant's overall sentence will not be impacted by his firearm offense. In practice, the fraud offense will likely subsume the firearm offense for sentencing purposes. In other words, the government cut the defendant a significant break by allowing him to plead to a global resolution of the fraud by criminal information at the same time as his firearm offense.

*Second*, the United States contends that the defendant's risk to reoffend is high. For a young man, he already has three felony convictions – two of which are now federal convictions. He has had checkered performance on bond where he seems to continuously find himself in proximity to firearms. And one of the underlying firearm offenses here involved the defendant shooting and killing another human being – albeit in self-defense, but this is nevertheless a very serious incident. This is alarming conduct that calls into question whether the defendant is committed to following the rules and norms of the community. One need not speculate about whether this is just empty boasting on social media with pictures of guns and currency. The defendant's commitment to this lifestyle is underscored by the seriousness of his criminal history.

*Third*, the Court should consider general and specific deterrence in fashioning a sentence for the defendant. With respect to general deterrence, the public must look at the actions of the defendant and know that these offenses will be not tolerated. Individuals inclined to consider committing crimes like those of the defendant must be made to pause to think about the consequences that follow. As for specific deterrence, the defendant has not been deterred to date. His issues on bond raise the question whether he has a proper respect for the law. Only a guideline sentence of incarceration will specifically deter this defendant. He has shown that the shock of being arrested, stopped by police, spending time in prison, and/or ordered by a Court not to violate

certain conditions has little deterrent effect on him. A guideline sentence is necessary to instill respect for the law and hopefully prevent this defendant from engaging in a similar course of conduct upon his release.

*Fourth,* for many of the same reasons that a significant sentence is necessary to ensure specific deterrence, there is a need for just punishment and to protect the public. The defendant's conduct as described in the statement of facts is inherently dangerous to those around him and the community more broadly. The defendant has a felony conviction for shooting at an occupied vehicle. While under court supervision, he was twice found to be in possession of firearms despite being prohibited. He was in close proximity to a firearm at least once while on bond from this Court. Incarcerating the defendant will remove him from the community and protect those individuals who would suffer if he were to engage in similar conduct in the future.

## CONCLUSION

The crimes before the Court are serious and call for a guideline sentence of incarceration. For the foregoing reasons, the United States respectfully requests concurrent sentences of 27 months on Counts 1 and 2.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By:         /s/
D. Mack Coleman
Assistant United States Attorney
Eastern District of Virginia
Newport News Division
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
mack.coleman@usdoj.gov

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 12, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send an electronic notification of such filing to the following:

Carolyn V. Grady
Federal Public Defender's Office
701 East Broad Street, Suite 3600
Richmond, Virginia 23219
(757) 565-0860

I HEREBY CERTIFY that on October 12, 2023, I sent a true and correct copy of the foregoing to the following by electronic mail:

Diane C. DeLuca
U.S. Probation Officer
701 East Broad Street, Suite 1150
Richmond, Virginia 23219
(757) 916-2539

/s/
D. Mack Coleman
Assistant United States Attorney
Eastern District of Virginia
Newport News Division
Fountain Plaza Three, Suite 300
721 Lakefront Commons
Newport News, Virginia 23606
Tel. (757) 591-4000
Fax: (757) 591-0866
mack.coleman@usdoj.gov